UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CARROLL DALE HENDERSON,           )
                                  )
           Plaintiff,             )
                                  )
v.                                )     No.:   3:14-CV-393-TAV-CCS
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social Security,   )
                                  )
           Defendant.             )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment [Doc. 16] and defendant's Motion for Summary Judgment [Doc. 18]. Plaintiff Carroll Dale Henderson seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On May 31, 2011, plaintiff protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), with an alleged onset date of November 30, 2010 [Tr. 97–107, 111–12]. The Social Security Administration denied plaintiff's application initially and upon reconsideration [Tr. 57–60, 67–70]. Plaintiff timely filed a request for a hearing, and he appeared before Administrative Law Judge George L. Evans, III, on January 31, 2013 in Knoxville, Tennessee [Tr. 72, 37]. The ALJ issued an unfavorable decision on May 18, 2013 [Tr.

18–36]. Plaintiff appealed the decision, which the Appeals Council declined to review on June 30, 2014 [Tr. 16–17, 1–6].

Having exhausted his administrative remedies, plaintiff filed a Complaint with this Court on August 21, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2.    The claimant has not engaged in substantial gainful activity since November 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3.    The claimant has the following combined impairments: *insulin-dependent type II diabetes mellitus; lumbago; right ankle pain, status-post ORIF; depression; and anxiety* (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *light* work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to *occasional* operation of foot controls with his right lower extremity. Additionally, he is limited to *occasional* climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. He is precluded from any climbing of ladders,

2

ropes, or scaffolds. He should avoid concentrated exposure to work hazards. He can perform simple and detailed tasks over a full workweek; maintain concentration, persistence, and pace for low-level detailed tasks over a normal workday; interact infrequently or one-on-one with the general public; meet basic social demands in a work setting; and adapt to routine/frequent changes in the workplace.

6. The claimant is capable of performing past relevant work as a Fast Food Worker (Dishwasher) (DOT 311.472-010). This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 23–31].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

3

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional

4

capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Id.* at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation omitted) (internal quotation marks omitted); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

5

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546–47. Thus, an ALJ's procedural error is

harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, the claimant bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. Medical Evidence

Plaintiff protectively filed an application for DIB and SSI on May 31, 2011 with an alleged onset date of November 30, 2010 [Tr. 97–107, 111–12]. Plaintiff was born on November 30, 1979, and completed one year of college [Tr. 111, 117]. He has past relevant work experience as a fast food restaurant dishwasher [Tr. 117]. Plaintiff reported that he ceased working due to conditions of "leg problems due to hit by cars," scoliosis, hernia surgery pain, type I diabetes, depression, panic attacks, and a brain cyst [Tr. 116].

Plaintiff sought treatment for various physical ailments during multiple visits to the emergency rooms at LeConte Medical Center, Jefferson Memorial Hospital, and the University of Tennessee Medical Center, as well as a free health care clinic, Mountain Hope Good Shepherd Clinic. He was treated for shoulder pain, a hand injury, an insect bite, lower back pain, a fractured ankle, abdominal pain, chest pain, neck and arm pain, numbness of the toes and neuropathy, facial numbness, diabetes, and various other

7

ailments from 2009 through 2012 [Tr. 196, 207, 219, 245, 283, 288, 311, 361, 489, 491, 545, 751, 946, 983, 995].

Plaintiff received treatment from Peninsula Psychiatric Hospital ("Peninsula") in 2011 [Tr. 437–67, 635–37, 642–749]. In May 2011, plaintiff was assessed with an anxiety disorder, diabetes, hypothyroidism, knee problems, and a Global Assessment of Functioning ("GAF") of 55, and he was prescribed Luvox, Xanax and a trial of Lunesta [Tr. 452]. On July 7, 2011, plaintiff reported that he "got hit with a crow bar in a logging accident yesterday" [Tr. 441]. His mood was noted as angry and cheerless, with reports of chronic feelings of emptiness [*Id.*]. Plaintiff returned on July 21, 2011, for a follow up appointment and medication check [Tr. 443]. A CT scan of plaintiff's head was noted as normal, and he was directed to continue his medications and individual therapy [Tr. 443–44]. On August 8, 2011, Diana Cox, M.Ed. completed a functional assessment of plaintiff, finding marked dysfunction in his ability to engage in daily activities, sustain interpersonal functions, maintain concentration, and cope with adaptation and change [Tr. 584]. On October 11, 2011, plaintiff returned for a medication check and was assessed with a GAF of 58 [Tr. 578]. Plaintiff's therapist stated that he was doing well and was "soft spoken and polite" [*Id.*]. Plaintiff reported that he normally worked outside but was not working that day due to inclement weather [*Id.*].

Dr. Jeffrey Summers conducted an examination on August 10, 2011, at the request of the Commissioner [Tr. 468–77]. Dr. Summers diagnosed plaintiff with chronic back pain, chronic right ankle pain, and diabetes [Tr. 468, 476]. He found that plaintiff could

8

frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, and could stand or walk for up to 4 hours in an 8-hour workday for 2 hours at a time [Tr. 468–69]. Dr. Summers assessed that plaintiff could continuously reach, handle, finger, push, and pull, occasionally operate right foot controls, continuously operate left foot controls, occasionally climb, balance, stoop, kneel, crouch, and crawl, had no environmental limitations, and was unimpaired in activities of daily living [Tr. 470–73]. Dr. Summers noted that plaintiff was "alert and oriented to person, place, time, and situation. Cognitive function and intelligence are appropriate for his degree of formal education . . . . He interacted well with the examiner and exhibited no abnormal behaviors or mannerisms" [Tr. 476]. Dr. Summers concluded that plaintiff would have "difficulty bending, stooping, kneeling, squatting, crouching, crawling, [and] climbing" due to his decreased range of motion in his lumbar spine and right ankle [*Id.*]. However, Dr. Summers found that plaintiff should "tolerate all other work related activities with regards to his allegations. In particular, he maintains the full and unrestricted use of both upper extremities, the ability to work from a seated position, operate hand/foot controls, security work, etc[.] for 8 hours in a single workday" [*Id.*].

Dr. Maya Desai submitted a physical RFC assessment on September 1, 2011 [Tr. 492–500]. She found that plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, stand, walk, and sit for 6 hours in an 8-hour workday, and was unlimited in his ability to push or pull [Tr. 493]. Dr. Desai disagreed with Dr. Summers's RFC, noting that the objective evidence did not support his

9

assessment that plaintiff could only stand or walk for up to 4 hours in an 8-hour day [Tr. 498].

Dr. Karen Lawrence submitted a psychiatric RFC on September 6, 2011 [Tr. 501]. She found that there was insufficient evidence to assess plaintiff's alleged mental impairments because she suspected symptom exaggeration and found plaintiff's self-reports to be less than credible [Tr. 513].

Dr. Reeta Misra submitted a physical RFC on September 18, 2011 [Tr. 515–523]. Dr. Misra found that plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, stand, walk, and sit for up to 6 hours in an 8-hour workday, and was limited in his lower extremities to push or pull [Tr. 516]. Dr. Misra assessed that plaintiff could occasionally engage in all postural exertions, except that he could never balance [Tr. 517]. Dr. Misra found plaintiff to be partially credible, "but the intensity is not consistent with the totality of the medical evidence in file." [Tr. 522].

Dr. Amin Azimi submitted a psychiatric RFC on December 15, 2011 [Tr. 617]. Dr. Azimi diagnosed plaintiff with an anxiety disorder and found that he was mildly limited in activities of daily living [Tr. 622, 627]. Dr. Azimi assessed that plaintiff was moderately limited in his ability to maintain social functioning, concentration, persistence, and pace ("CPP"), and had no episodes of decompensation [Tr. 627].

10

## B. Other Evidence

Plaintiff submitted a work history report on July 8, 2011 [Tr. 177–84]. In describing his past work as dishwasher, plaintiff stated that he made tea, washed dishes, swept, and "put silverware out" [Tr. 178]. Plaintiff reported that the heaviest weight he lifted was 20 pounds and that he frequently lifted up to 10 pounds [*Id.*]. He stated that he frequently lifted and carried dishes, brooms, and "garbage sometimes[,]" and that he never had to sit, climb, kneel, crouch, crawl, or write [*Id.*].

The ALJ conducted a hearing on January 31, 2013, in which plaintiff testified [Tr. 37–52]. On April 18, 2013, the ALJ issued an unfavorable decision [Tr. 18–36]. In finding that plaintiff could perform light work with additional exertional and nonexertional limitations, the ALJ considered plaintiff's testimony, demeanor and appearance during the administrative hearing, treatment history, medications, and the opinions of his non-treating and non-examining physicians [Tr. 26–31]. In considering plaintiff's physical limitations, the ALJ assigned great weight to the opinions of Dr. Desai and Dr. Misra, and found Dr. Summers's opinion to be credible [Tr. 27]. In determining plaintiff's mental RFC, the ALJ assigned great weight to Dr. Azimi's opinion [Tr. 28]. The ALJ assigned little weight to the opinion of Ms. Cox, who determined that "the claimant is up to *markedly* limited in his abilities to make judgments on even simple work-related decisions and interact appropriately with the public" [Tr. 29]. The ALJ found the treating source rule inapplicable because "Ms. Cox appears to have uncritically accepted most, *if not all*, of what the claimant has subjectively reported

11

to her regarding his symptoms and limitations. Yet, as explained throughout this decision, there exist good reasons for questioning the reliability of the claimant's subjective allegations" [*Id.*].

The ALJ found that plaintiff could perform past relevant work as dishwasher, relying on the Dictionary of Occupational Titles ("DOT") position of *Fast Foods Worker*, 311.472-010 [Tr. 31]. The ALJ explained that "this work is classified as *light* exertional with a Specific Vocational Preparation (SVP) level of '2'—indicative of *unskilled* work" [*Id.*].

## V. POSITIONS OF THE PARTIES

Plaintiff argues that the ALJ erred in his RFC analysis by failing to explain the weight accorded to plaintiff's non-treating and non-examining physicians. Plaintiff further contends that the ALJ erred in finding plaintiff could perform past relevant work as a dishwasher. Plaintiff also argues that ALJ relied on a DOT description that does not accurately describe his past relevant work.

The Commissioner responds that the ALJ's RFC is supported by substantial evidence and adheres to agency procedure. The Commissioner contends that the ALJ properly weighed the medical evidence and the opinions of plaintiffs' non-treating and non-examining physicians. The Commissioner argues that the ALJ did not err in finding plaintiff could perform past relevant work as a dishwasher because this work corresponds with the ALJ's RFC assessment and plaintiff's past relevant work.

12

## VI. ANALYSIS

The Court will address each of the issues presented by plaintiff in turn.

### A. The ALJ's RFC Analysis and Consideration of the Medical Evidence

Plaintiff contends that the ALJ's RFC assessment is flawed because he failed to explain the weight assigned to plaintiff's non-treating and non-examining physicians [Doc. 17 at 11–14]. The Court disagrees. In order to review the ALJ's decision that plaintiff is not disabled, the Court must first inquire into whether the ALJ's RFC determination was based on substantial evidence and adhered to agency procedure. The Court does so and finds in the affirmative.

An ALJ is responsible for determining a plaintiff's RFC after reviewing all of the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ may consider both medical and non-medical evidence in reaching an RFC determination. *Id.* A plaintiff's RFC is the most that a plaintiff can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. Feb. 09, 2007) (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)).

13

A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In determining a claimant's RFC, the ALJ must "make findings of fact" as to the claimant's functional and physical limitations. *Simpson v. Colvin*, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013), *adopted by*, 3:11-CV-00481, 2013 WL 4780082 (M.D. Tenn. Sept. 4, 2013). Further, the ALJ "must 'articulate with specificity reasons for the findings and conclusions that he or she makes' to facilitate meaningful judicial review." *Wright v. Astrue*, 1:07-CV-226, 2009 WL 890051, at *1 (E.D. Tenn. Mar. 26, 2009) (quoting *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999)).

Under the Social Security Act and its implementing regulations, an ALJ will consider all medical opinions in conjunction with any other relevant evidence received in order to determine a claimant's RFC. 20 C.F.R. § 404.1527(b), (c). Generally, the ALJ will give controlling weight to the opinions of treating physicians. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6).

14

Non-treating physicians are not subject to controlling weight. Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence." 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6), the same factors used to analyze the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(e)(2)(iii); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d), (f)).

Although an ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled, 20 C.F.R. § 404.1527(b), the ALJ need not specifically address each piece of evidence to adequately consider the record in its entirety. *See Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) ("[T]he fact that the ALJ's opinion failed to discuss all of the

15

testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting *NLRB v. Beverly Enterprises-Massachusetts*, 174 F.3d 13 (1st Cir. 1999)).

Here, the ALJ found that plaintiff could perform light work with additional exertional and non-exertional limitations [Tr. 26]. In making this determination, the ALJ weighed plaintiff's symptoms, medical records, treatment plans, statements, behavior and demeanor, daily activities, work history, and the opinions of plaintiff's physicians, including treating sources and non-treating, non-examining physicians [Tr. 26–31]. The ALJ specifically considered the opinions of non-treating physicians Desai, Misra, Azimi, and Summers [*See* Tr. 27–28 (assigning the opinions of Drs. Desai, Misra, and Azimi great weight and finding Dr. Summers to be credible)]. In determining the weight assigned to these medical opinions, the ALJ considered many of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6), specifically addressing the amount of relevant evidence that supported their opinions, their opinions' consistency with the record as a whole, and other factors that tended to support or contradict their opinions, such as plaintiff's continued work activity and history of malingering [*See* Tr. 27 (finding the opinions of Drs. Desai and Misra to be consistent with plaintiff's self-reported work activity, such as his continued "light" work for his girlfriend's father and treatment records showing that he had engaged in heavier work, such as logging)]; [Tr. 27–28 (noting that the opinions of Drs. Desai, Misra, and Summers were consistent with Dr. Summers's "largely benign clinical findings," including plaintiff's ability to ambulate

16

normally, sit, stand, and climb off the exam table without difficulty, plaintiff's negative straight leg raise, and the lack of evidence of "any sensory, motor, reflex, or neurological deficits" or end organ damage due to plaintiff's diabetes)]; [Tr. 28 (assigning great weight to Dr. Azimi's opinion "because his assessment is consistent with the record as a whole," such as Ms. Garland's notations of exaggeration, plaintiff's "responses during psychological testing[,] and his apparent symptom magnification result[ing] in an invalid profile")]. The Court finds that this analysis satisfies agency regulation and is supported by substantial evidence.

Plaintiff specifically takes issue with the ALJ's consideration of the opinions of Dr. Summers and Dr. Azimi. Plaintiff first argues that the ALJ failed to explain the weight assigned to Dr. Summers, and that such an omission was not harmless because "any subsequent reviewer is left to speculate why the limitations set forth by Dr. Summers were not included in the RFC" [Doc. 17 at 12]. Plaintiff further contends that that the ALJ erred by not incorporating Dr. Azimi's moderate limitations into plaintiff's RFC after granting his opinion great weight.

The Court finds that the ALJ's reasoning satisfies agency regulations. In regard to Dr. Summers, plaintiff contends that the ALJ erred in not adopting Dr. Summers's assessment that plaintiff could only stand for 4 hours in an 8-hour workday [Doc. 17 at 12]. Plaintiff argues that once the ALJ found Dr. Summers to be credible, the ALJ should have either adopted Dr. Summers's opinion in full or explained the limitations that he found unpersuasive [*See id.*]. Plaintiff contends that the ALJ's failure to do so

17

resulted in the ALJ cherry picking the parts of the record that supported his RFC determination [*See id.*]. The Court disagrees.

The ALJ found Dr. Summers's opinion to be credible, as reflected in his RFC, and explained any discrepancy in his opinion. Dr. Summers found that plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, and stand or walk for up to 4 hours in an 8-hour workday [Tr. 468–69]. He assessed that plaintiff could continuously reach, handle, finger, push, and pull, occasionally operate right foot controls, continuously operate left foot controls, occasionally climb, balance, stoop, kneel, crouch, and crawl, had no environmental limitations, and was unimpaired in activities of daily living [Tr. 470–73]. The ALJ's RFC embodies the same functional limitations. Plaintiff is limited to light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, the ALJ limited plaintiff to only "*occasional* climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling" [Tr. 26].

Plaintiff takes issue with the fact that the ALJ did not specifically limit plaintiff to standing for up to 4 hours in a regular workday at only 2 hours at a time [*See* Doc. 17 at 12]. In making this argument, plaintiff relies on *Jones v. Commissioner of Social Security*, in which the court found error where the "ALJ's decision offers no rationale as to why he adopted some limitations offered by [the non-examining physician] and overlooked others." No. 3:13-CV-019, 2014 WL 340427, at *5 (S.D. Ohio Jan. 30, 2014) (internal citations omitted). The Court concurs that the ALJ did not specifically address

18

Dr. Summers's standing requirement.  Nevertheless, although further explanation would be helpful, such an omission is harmless.

The ALJ was under no obligation to specifically address each piece of evidence in order to adequately consider the record in its entirety.  *See Loral Def. Sys.-Akron*, 200 F.3d at 453.  Furthermore, it is Drs. Desai and Misra whose opinions were granted great weight and upon whom the Court requires explanation of the weight assigned.  The ALJ merely found Dr. Summers to be "credible" [Tr. 27].  Both Drs. Desai and Misra found that plaintiff could stand, walk, or sit for up 6 hours in an 8-hour workday [Tr. 493, 516].  This assessment is consistent with the requirements of light work.  *See* SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983) (explaining that "'[f]requent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

In the absence of a controlling treating physician opinion, the ALJ is obligated to explain the weight assigned to non-treating and non-examining physicians.  *See* 20 C.F.R. § 404.1527(e)(2)(ii) ("the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist").  In granting the opinions of Drs. Desai and Misra great weight, the ALJ explained that their opinions were consistent with that of Dr. Summers, specifically relying on Dr. Summers's "largely benign clinical findings" [Tr. 27].  The ALJ adopted their assessments in his RFC, and he

crafted an opinion that was thorough and detailed, providing sufficient explanation to make clear to subsequent reviewers the reasons for the weight assigned to the medical evidence and the RFC as a whole. *See* 20 C.F.R. § 404.1527(e)(2)(ii).

Additionally, even though the ALJ did not expressly discuss Dr. Summers's standing limitation, he addressed any discrepancies between physician opinions and his RFC. The ALJ discounted any opinions with more restrictive limitations based on a consideration of plaintiff's daily activities, "weak medical evidence," continued ability to work, and history of malingering [Tr. 27–31]. The ALJ explained that his RFC "is most consistent with the record as a whole, and all legitimately-supported limitations are sufficiently accounted for therein. Moreover, the record includes evidence strongly suggesting that the claimant has exaggerated symptoms and limitations" [Tr. 31].

Plaintiff makes a related argument in regard to Dr. Azimi's opinion. The Court is equally unpersuaded. Plaintiff contends that the ALJ erred by granting Dr. Azimi's opinion great weight while failing to adopt his assessment in plaintiff's RFC [Doc. 17 at 13]. In making this argument, plaintiff relies on *Ealy v. Commissioner of Social Security* for the proposition that simple or low or unskilled work is not synonymous with moderation limitations [*Id.*]. *See* 594 F.3d 504 (6th Cir. 2010). The Court disagrees and concurs with *Oliver v. Colvin*, No. 2:12-CV-480, 2014 WL 710101, at *5 (E.D. Tenn. Feb. 21, 2014) ("While it is true that *Ealy* cites, somewhat in dicta, a district court case which held that where a claimant has moderate limitations in concentration, persistence

20

or pace, the hypothetical will never be adequate when it merely limits the claimant to simple, routine, unskilled work, this Court is unwilling to make such a jump.").

Here, Dr. Azimi found that plaintiff was moderately limited in his ability to maintain social functioning, concentration, persistence, and pace [Tr. 627]. Specifically, Dr. Azimi assessed that plaintiff's "[m]edical records do not indicate *any significant limitations* due to mental difficulties. [Plaintiff's] symptoms and impairments would not singly or in combination prevent [plaintiff] from completing work-like activities; however, CPP, and social are *somewhat impacted* by the diagnoses and would cause moderate limitations in basic work-like duties" [Tr. 629] (emphasis added). In assessing plaintiff's ability to maintain social functioning and CPP, Dr. Azimi found moderate limitations in only four categories: plaintiff's ability to carry out detailed instructions, maintain concentration for extended periods, complete a normal work week without interruptions due to his diagnoses, perform at a consistent pace, and interact appropriately with the general public [Tr. 631–32]. However, Dr. Azimi found the plaintiff was "not significantly limited" in the other 13 categories of CPP and social functioning, including his ability to carry out short, simple instructions, sustain an ordinary routine, make simple work-related decisions, get along with coworkers, follow instructions and accept criticisms, maintain appropriate social behavior, and respond appropriately to work place changes [*Id.*].

21

The ALJ's RFC comports with this assessment. The RFC limits plaintiff to "simple and detailed tasks over a normal workday; interact infrequently or one-on-one with the general public; meet basic social demands in a work setting; and adapt to routine/frequent changes in the workplace" [Tr. 26]. In explaining the weight assigned to Dr. Azimi's opinion, the ALJ found that Dr. Azimi's assessment was "consistent with the record as a whole" [Tr. 28]. The ALJ went on to consider plaintiff's therapy records showing that plaintiff was capable of interacting appropriately, and a treating mental status exam reflecting that his concentration was unimpaired [Tr. 28].

The Court finds that the ALJ's RFC analysis adequately addressed the weight assigned to Dr. Azimi's opinion and the reasons for that weight. In doing so, the Court again follows the reasoning in *Oliver*, 2014 WL 710101, at *5 ("[A] 'moderate' limitation in concentration, persistence or pace should not logically carry the impact in the adjudicatory process that some suggest. The fact that an individual may not function at the same pace as others is a limitation, but if the person still performs 'satisfactorily,' that does not denote disabled status."). Any moderate restrictions identified by Dr. Azimi are adequately reflected in plaintiff's RFC, especially considering Dr. Azimi's finding that plaintiff did not suffer "any significant limitations due to mental difficulties" [Tr. 629]. Plaintiff's argument to the contrary is without merit.

The Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ considered many of the factors listed in 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6), and properly considered the medical evidence in accordance with

22

agency procedure. Nevertheless, because this Court finds remand appropriate for the reasons explained below, the Court encourages the ALJ to cure the harmless error in the RFC analysis upon remand by more fully explaining the weight assigned to Dr. Summers's opinion.

### B. The ALJ's Finding That Plaintiff Can Perform Past Relevant Work

Plaintiff also contends that the ALJ erred in finding that plaintiff can perform his past relevant work, because DOT 311.472-010, *Fast Foods Worker*, does not adequately describe plaintiff's past employment as a dishwasher [Doc. 17 at 8–11]. Plaintiff argues DOT 318.687-010, *Kitchen Helper*, more accurately describes his past relevant work and that the ALJ committed reversible error in finding plaintiff could perform his past work as a dishwasher, because neither DOT 311.472-010 nor DOT 318.687-010 comply with his RFC. The Court agrees.

"A claimant bears the burden of proving she cannot perform her past relevant work either as she performed the job or as the job is generally performed in the national economy." *Ellis v. Astrue*, No. 3:11-CV-535, 2012 WL 5304203, at *5 (E.D. Tenn. Oct. 4, 2012) (citing *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987)). Nevertheless, "the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job." *D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp. 2d 716, 723 (W.D. Mich. 2007); *see also* 20 C.F.R. § 404.1520(f) (explaining that "we will compare our residual functional capacity assessment . . . with the physical and mental demands of your past relevant work"); *Simpson v. Colvin*, 3:11-

23

0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) ("[T]he ALJ must 'explain *why* the [plaintiff] can perform the demands and duties' of her past work." (quoting *D'Angelo*, 475 F. Supp. 2d at 723–24) (alteration in original)).

An ALJ may obtain evidence about the requirements of a claimant's past relevant work from many sources. For example, an ALJ "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles'" to obtain evidence regarding whether a claimant is capable of performing past relevant work, in accordance with the claimant's RFC. 20 C.F.R. § 404.1560(b)(2).

Once an ALJ finds that a claimant can perform past relevant work, a finding of "not disabled" is appropriate. *See* SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). In order to make this assessment, "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." *Id.* Typically, the claimant is "the primary source for vocational documentation," and statements regarding past relevant work are sufficient for determining the physical and mental demands of past employment. *Id.* Past relevant work includes not only "the specific job a claimant performed," but also "the same kind of work as it is customarily performed throughout the economy." *Id.*

Here, the ALJ found that plaintiff was capable of performing his past relevant work as a dishwasher [Doc. 31]. In determining the requirements of plaintiff's past relevant work, the ALJ relied on DOT 311.472-010, *Fast Foods Worker*, and plaintiff's disability report classifying his past work as a dishwasher for fast food restaurants [*See id.*]. The ALJ found that, according to the DOT, "this work is classified as *light* exertional with a Specific Vocational Preparation (SVP) level of '2'—indicative of *unskilled* work" [*Id.*]. The ALJ went on to explain that "the claimant has admitted that he continues to perform 'light' work for his girlfriend's father, which further suggests that his impairments would not preclude him from performing other 'light' work, such as his past work as a dishwasher" [*Id.*].

Plaintiff contends that this analysis is insufficient to satisfy the ALJ's duty to explain why plaintiff can perform the demands of his past work [Doc. 17 at 8–11]. The Court interprets plaintiff's argument as being two-fold. First, plaintiff claims that DOT 311.472-010, *Fast Foods Worker*, does not adequately encompass his past work as a dishwasher and, in any event, that the demands of DOT 311.472-010 are outside the limitations of plaintiff's RFC [*Id.* at 8–10]. Second, plaintiff contends that the ALJ should have classified his past work as a dishwasher under DOT 318.687-010, *Kitchen Helper*, which more fully encompasses the duties of plaintiff's past work [*Id.* at 8–11]. Plaintiff points out that this latter position is classified as medium work, and therefore, also falls outside the purview of his RFC [*Id.*]. Plaintiff claims that these errors are not

harmless and warrant remand because plaintiff's past relevant work, considered under either DOT category, requires abilities beyond plaintiff's RFC [*Id.*]. The Court concurs.

The Court acknowledges that plaintiff has the burden of proving he cannot perform past relevant work. *See Ellis*, 2012 WL 5304203, at *5. Even so, the ALJ must "develop the record regarding the demands of the plaintiff's past relevant work as required by Social Security Ruling 82–62." *Simpson*, 2013 WL 4456383, at *15. As emphasized in Social Security Ruling 82–62:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

1982 WL 31386, at *3.

The ALJ's decision fails to satisfy this important requirement. The DOT position of *Fast Foods Worker* is inconsistent with plaintiff's past relevant work as a dishwasher. The main function of DOT 311.472-010, *Fast Foods Worker*, is to "serve customers" and work primarily as a cashier. The Court notes that this position is classified as light work, which complies with plaintiff's physical RFC and his own work history report limiting his lifting requirement to 20 pounds [*See* Tr. 26, 178]. Nevertheless, plaintiff's RFC limits his social functioning to "interact infrequently or one-on-one with the general public" [Tr. 26]. The position of *Fast Foods Worker* requires "significant" interaction

26

with people. *See* DOT 311.472-010. Therefore, the Court finds that this position fails to comply with the nonexertional limitations set forth in plaintiff's RFC.

The Court further agrees with plaintiff that DOT 318.687-010, *Kitchen Helper*, more accurately describes plaintiff's past work as a dishwasher. DOT 318.687-010 includes washing dishes, pots, pans, and trays, sweeping and mopping floors, taking out the garbage, and maintaining a clean kitchen area. Plaintiff described his past work as a dishwasher to include washing dishes, putting out clean silverware, sweeping, making tea, and taking out the garbage [Tr. 178]. The position described by DOT 318.687-010, *Kitchen Helper*, is classified as medium work. Here, the ALJ found that plaintiff was limited to light work with additional exertional and nonexertional limitations [Tr. 26].

The ALJ failed to address these discrepancies between the position of *Kitchen Helper* and the limitations in plaintiff's RFC. Therefore, the Court finds the ALJ's analysis inadequate to satisfy his duty to fully develop the record in regard to plaintiff's past relevant work. *See Simpson*, 2013 WL 4456383, at *15. Not only did the ALJ misclassify plaintiff's past relevant work, but the ALJ relied on a DOT description of plaintiff's past relevant work that does not comply with plaintiff's RFC [*See* Tr. 26, 31]. Neither description embodied in DOT 311.472-010, *Fast Foods Worker*, or 318.687-010, *Kitchen Helper*, complies with plaintiff's RFC. DOT 311.472-010, *Fast Foods Worker*, requires a level of social interaction precluded by plaintiff's nonexertional limitations and does not accurately portray plaintiff's past work as a dishwasher. DOT 318.687-010,

*Kitchen Helper*, more accurately describes plaintiff's past work, but it is classified at an exertional and strength level beyond plaintiff's RFC.

If the ALJ had accurately classified plaintiff's past relevant work under DOT 318.687-010, *Kitchen Helper*, however, any discrepancy between the work description and plaintiff's RFC likely could have been resolved by simply referencing plaintiff's own description of his past work. The Court notes that a "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3. Plaintiff's work history report describes his past work as a dishwasher as occasionally having to lift 20 pounds and frequently lifting 10 pounds [Tr. 178]. These lifting requirements comply with light duty work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). The ALJ never referenced plaintiff's own description of his past relevant work, but only cited to plaintiff's disability report, which simply listed plaintiff's past relevant work as a dishwasher without providing any description of how this work was actually performed [*See* Tr. 31, 117]. Additionally, the ALJ's questioning during the administrative hearing was inadequate to determine the demands of plaintiff's past work as it was actually performed [*See* Tr. 45]. The ALJ merely inquired as to the means of termination of plaintiff's work as a dishwasher [*Id.*]. Plaintiff responded that he was fired, and the ALJ

28

declined to inquire further into the demands or requirements of plaintiff's work as a dishwasher [*Id.*].

The ALJ could have cured any discrepancy between DOT 318.687-010, *Kitchen Helper*, and plaintiff's past relevant work by considering plaintiff's work history report or making an alternative finding that plaintiff could perform other work existing in significant numbers in the national economy. Yet the ALJ made no alternative findings, nor did he provide an explanation for the discrepancies in his findings at step four. Accordingly, this case is similar to *Prater v. Astrue*, in which the court found that "[b]ecause the ALJ erred at step four . . . the Commissioner's decision can be affirmed only if the ALJ also found in the alternative, with the support of substantial evidence, that plaintiff was capable of making an adjustment to 'other work' existing in significant numbers in the national economy." No. 4:08-CV-83, 2010 WL 1257882, at *9 (E.D. Tenn. Mar. 3, 2010) (internal citations omitted) (citing 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(1)). The court in *Prater* found that the ALJ committed reversible error, explaining its grounds for remand as follows:

> That the evidence adduced at the hearing *could* support the same outcome at step five, however, is largely irrelevant to the Court's inquiry. Substantial evidence review, as noted above, presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. The decision whether a claimant is disabled and the findings of fact necessary to reach that decision are entrusted solely to the Commissioner, and even a high probability that the result will be the same on remand does not shift that authority to a reviewing court.

*Id.* (citations omitted) (internal quotation marks omitted).

29

The Court finds that the ALJ committed reversible error in this case for the same reasons as those discussed in *Prater*. Even if the ALJ had classified plaintiff's past relevant work under DOT 318.687-010, *Kitchen Helper*, which includes washing dishes, pots, pans, trays, sweeping and mopping floors, taking out the garbage, and maintaining a clean kitchen area, the ALJ failed to consider the discrepancy in plaintiff's RFC and the position described by DOT 318.687-010. Furthermore, the ALJ's reference to plaintiff's "other 'light' work" as performed for his girlfriend's father is also inadequate to satisfy the ALJ's duty [Tr. 31]. The record does not contain a sufficient description of this work, its requirements, time frame, salary, or any other details that would allow the Court to understand the basis of the ALJ's decision.

Although the Court finds that consideration of plaintiff's work history report or an alternative finding at step five would cure any error at step four, the Court cannot perform the duties of the ALJ. The Court is limited to reviewing the ALJ's decision under a substantial evidence standard. To assume what the ALJ should or would have done in order to avoid remand crosses the line into *de novo* review, which the Court cannot and will not do. Therefore, the Court finds plaintiff's argument to have merit and remands this matter for further consideration of plaintiff's ability to perform past relevant work. On remand, the ALJ shall consider plaintiff's work history report and any other evidence regarding plaintiff's past work as dishwasher in order to fully develop the record in regard to plaintiff's past relevant work. The ALJ also should further develop his RFC

30

analysis, more fully explaining the weight assigned to the opinion of plaintiff's non-treating physician, Dr. Summers.

## VII.   CONCLUSION

For these reasons, plaintiff's Motion for Summary Judgment [Doc. 16] is **GRANTED in part and DENIED in part**, and defendant's Motion for Summary Judgment [Doc. 18] is **GRANTED in part and DENIED in part**.  This matter is hereby **REMANDED** to the ALJ.  On remand, the ALJ:

1. Shall reconsider plaintiff's past relevant work, fully developing the record in determining whether plaintiff can perform past relevant work and sufficiently explaining the reasons for this decision; and

2. Should more fully explain the weight assigned to the opinion of plaintiff's non-treating physician, Dr. Summers.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE